FACULTY ASSOCIATION OF DISTRICT 205, IEA-NEA, Petitioner, v. ILLINOIS EDUCATIONAL LABOR RELATIONS BOARD *et al.*, Respondents.

Fourth District   No. 4—88—0123

Opinion filed October 26, 1988.

Gregory J. Malovance and William G. Miossi, both of Winston & Strawn, of Chicago, for petitioner.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Bret A. Rappaport, Assistant Attorney General, of Chicago, of counsel), for respondent Illinois Educational Labor Relations Board.

John H. Hager and Elaine K. B. Siegel, both of Hager & Collins, of Chicago, for respondent Board of Education of Township High School District No. 205.

JUSTICE KNECHT delivered the opinion of the court:

On December 23, 1986, the petitioner, Faculty Association of District 205, IEA-NEA (Association), filed an unfair labor practice charge with the respondent, Illinois Educational Labor Relations Board (IELRB), alleging the corespondent, Board of Education of Township High School District No. 205 (District or school board), refused to comply with a binding arbitration award in favor of Marion Fox, a District employee. A complaint issued by the IELRB alleged the District failed to comply with the arbitration award in violation of sections 14 (a)(1), (a)(5) and (a)(8), of the Illinois Educational Labor Relations Act (Act) (Ill. Rev. Stat. 1987, ch. 48, pars. 1714(a)(1), (a)(5), (a)(8)). On February 18, 1988, the IELRB declared the arbitrator's award nonbinding and dismissed the complaint. (*Township High School District No. 205 Board of Education*, 4 Pub. Employee Rep. (Ill.) par. 1040, case No. 86—CA—0113—C (Illinois Educational Labor Relations Board, Feb. 18, 1988).) The Association appeals the decision of the IELRB and we affirm.

As amended, section 10—22.23 of the School Code requires that school nurses hired on or after July 1, 1976, be certificated under section 21—25 of the School Code. (Ill. Rev. Stat. 1987, ch. 122, pars. 10—22.23, 21—25.) A certificate was not a requisite of continued employment for teachers hired prior to July 1, 1976. Section 21—25 requires that a school service personnel certificate shall be issued to only those qualified nurses holding a bachelor's degree from a recognized institution of higher learning. "The holder of such certificate shall be entitled to all of the rights and privileges granted holders of a valid teaching certificate, including teacher benefits, compensation

and working conditions." (Ill. Rev. Stat. 1987, ch. 122, par. 21—25.) These rights and privileges include "contractual continued service," otherwise known as tenure. Ill. Rev. Stat. 1987, ch. 122, par. 24—11.

The "reduction in personnel" provision of article IX of the collective-bargaining agreement (contract) between the District and Association requires the former, in the event of reduced enrollment, to first dismiss teachers who have not entered upon contractual continued service. The contract language parallels that in section 24—12 of the School Code. Ill. Rev. Stat. 1987, ch. 122, par. 24—12.

On April 8, 1981, the District honorably dismissed employee Marion Fox because of a decline in enrollment. Although Fox had been a school nurse in the Cook County District since 1966, she did not hold a bachelor's degree or a school service personnel certificate. At the time of Fox' dismissal, the District employed two nurses, in addition to Fox, who held certificates and enjoyed full statutory tenure. The District told Fox she was dismissed because she was the only nurse who was not certificated and who lacked any right of contractual continued service.

The Association filed a grievance on Fox' behalf and demanded arbitration. The District denied the grievance and argued it was inarbitrable.. On November 4, 1982, the circuit court ordered the parties to arbitrate the dispute and the First District Appellate Court affirmed the decision on December 27, 1983. (*Board of Education of Township High School District No. 205 v. Faculty Association of District 205* (1983), 120 Ill. App. 3d 930, 458 N.E.2d 1017 (*District No. 205*).) The Act became effective only days later on January 1, 1984.

The dispute was arbitrated on October 31, 1984. On October 17, 1985, the arbitrator found the District violated the contract when it dismissed Fox for being untenured when she had otherwise been treated by the District as a tenured teacher. The arbitrator concluded Fox was "tenured under the contract" and ordered she be reinstated with back pay, benefits, and seniority. On September 9, 1986, the arbitrator issued an award clarifying the amount of back pay owed.

The District refused to comply with the arbitrator's award and on December 8, 1986, filed a petition in the circuit court to vacate the arbitrator's decision. On July 22, 1987, the court dismissed the case for lack of subject matter jurisdiction. The District appealed, but the appeal was dismissed (July 21, 1988, 1st Dist. Gen. No. 1—87—2365).

Meanwhile, on December 23, 1986, the Association filed an unfair labor practice charge alleging the District refused to abide by the terms of the arbitrator's decision and a complaint was filed by the IELRB on February 26, 1987. In an order and opinion issued on Feb-

ruary 18, 1988, the IELRB dismissed the complaint and declared the arbitrator's award nonbinding because it conflicted with the School Code in violation of section 10(b) of the Act, as well as diminished the rights of statutorily tenured teachers. *Township High School District No. 205*, 4 Pub. Employee Rep. (Ill.) par. 1040, at 153.

The Association appeals the decision of the IELRB on the grounds that (1) the IELRB's misunderstanding of the law of the case, as set forth in the appellate court's *District No. 205* decision, resulted in an erroneous holding, (2) the IELRB's application of section 10(b) of the Act to invalidate the arbitrator's award constituted "retroactive impairment of Fox' substantive rights," and (3) the *District No. 205* decision was *res judicata* for purposes of the IELRB's review.

Initially, the IELRB and District argue the Association has waived the first and last arguments by failing to adequately raise them in its briefs addressing the issues before the IELRB. While they note the second issue was presented to the IELRB in the Association's supplemental brief, the IELRB and District allege the argument is nonreviewable because the Association has offered an opposite theory of the case to this court on appeal.

■ Generally the theory upon which a case is presented to the lower tribunal cannot be changed on review, and an issue not raised below is considered waived for purposes of appeal. (*Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141, 324 N.E.2d 417; *IMM Acceptance Corp. v. First National Bank & Trust Co.* (1986), 148 Ill. App. 3d 949, 499 N.E.2d 1012.) The waiver principle applies equally to the review of an administrative decision. *Leffler v. Browning* (1958), 14 Ill. 2d 225, 151 N.E.2d 342; *Rackow v. Human Rights Comm'n* (1987), 152 Ill. App. 3d 1046, 504 N.E.2d 1344.

■ A review of the initial and supplemental briefs filed below by the Association reveals the law of the case argument presented to the IELRB is vastly different from the one argued before this court. In its supplemental brief to the IELRB, the Association argued the law of the case, as established by the *District No. 205* decision, was derived from an interpretation of the parties' contract. By following the appellate court's decision "religiously," the Association asserted "[a]rbitrator Malin was able to conclude based upon a straightforward interpretation of the terms of the collective bargaining agreement, that Ms. Fox had contractual tenure all the while. *** Clearly, the remedy awarded to Ms. Fox in no way involved an exercise of discretion by the arbitrator, but was essentially dictated by the terms of the contract."

By contrast, the Association now argues the law of the case established that Fox could prevail on her grievance before the arbitrator on the theory of equitable estoppel, or "tenure by estoppel," rather than a contractual theory. The Association maintains the IELRB misunderstood the law of the *District No. 205* case when it suggested the arbitrator's finding of tenure was based on an interpretation of the contract. According to the Association on appeal, the arbitrator found Fox tenured by estoppel.

"Where a party has presented his case to an administrative agency upon a certain and definite theory, it will not be permitted to change in court and prevail upon another theory and issue not advanced to the agency." (*Environmental Protection Agency v. Pollution Control Board* (1976), 37 Ill. App. 3d 519, 521, 346 N.E.2d 427, 428.) Accordingly, we find the Association has inappropriately changed its theory on review regarding the law of the *District No. 205* case. However, given the significance of the issue and our view that the relatively new statutes involved in this case are in need of judicial interpretation, we elect to address the merits of the Association's argument.

■ After careful examination of the *District No. 205* decision, we conclude the Association misinterprets the law of the case doctrine. Law of the case as decided on a previous appeal is binding on both the trial court and appellate court in subsequent appeals, unless the facts or law have substantially changed in the interim. (*Lubbers v. Norfolk & Western Ry. Co.* (1986), 147 Ill. App. 3d 501, 498 N.E.2d 357, *appeal denied* (1987), 113 Ill. 2d 576, 505 N.E.2d 354.) However, the mere presentation of an issue to a reviewing court does not foreclose relitigation on " 'issues of fact [citations], and matters concerning the merits of the controversy between the parties which were presented to but not decided on by the appellate court ***.' " *Callier v. Callier* (1986), 142 Ill. App. 3d 407, 414, 491 N.E.2d 505, 510, quoting *Zokoych v. Spalding* (1980), 84 Ill. App. 3d 661, 667, 405 N.E.2d 1220, 1225.

■ To resolve this issue we must examine the *District No. 205* decision and determine the law of the case. It is important to note the court in *District No. 205* expressly limited its review to the issue whether the dispute over Fox' termination was arbitrable under the contract grievance provisions. The District argued the grievance was inarbitrable in part because resolution of the dispute would require an interpretation of the State law tenure provisions in the School Code. (Ill. Rev. Stat. 1987, ch. 122, pars. 24—11, 24—16.) The District asserted it agreed to arbitrate only grievances "arising out of the misin-

terpretation or inequitable application of the terms" of the contract. In concluding Fox' grievance was arbitrable, the court reasoned:

> "[A] determination as to how the 'reduction in personnel' provision applies to Ms. Fox may ultimately be resolved according to whether or not she is tenured under the School Code. However, we cannot agree that an arbitrator's decision will necessarily require a finding that Ms. Fox is entitled to statutory tenure. In this regard, we note that [Fox and Association] have not limited themselves to arguments based on Ms. Fox' right to tenure under the School Code. [Fox and Association] also advance their cause under a theory of promissory estoppel based on the past practices and assurances of the school board. Clearly, statutory tenure with its full panoply of procedural safeguards may not be obtained by estoppel. However, equitable principles may estop the school board from denying that Ms. Fox is tenured solely for purposes of applying the 'reduction in personnel' provision of the contract. Viewed in this light, Ms. Fox' grievance clearly arises from an alleged 'misinterpretation or *inequitable* application of the terms' of the contract and falls squarely within the provisions of the arbitration clause." (Emphasis in original.) *District No. 205*, 120 Ill. App. 3d at 935, 458 N.E.2d at 1020-21.

In conclusion, the court opined the parties bargained for an arbitrator's, not the court's, determination of Fox' tenure status based on an interpretation of the contractual and School Code tenure provisions at issue.

We conclude the only issue decided by the appellate court in *District No. 205* was "that the initial determination of Ms. Fox' tenure status for purposes of applying the 'reduction in personnel' contract provisions should be done by an arbitrator." (*District No. 205*, 120 Ill. App. 3d at 936, 458 N.E.2d at 1021.) Although the court in *dicta* noted equitable principles *may* estop the District from denying that Fox was tenured, that determination was clearly left to the arbitrator. The law of the case was that Fox' grievance was arbitrable. Nowhere in the decision did the court hold the arbitrator was bound to decide the case on a tenure by estoppel theory.

The Association insists the arbitrator implemented the court's alleged estoppel theory when the grievance went to arbitration. Using the practice of the parties as a tool to interpret the contract, the arbitrator found various factors showed the District had been treating Fox as "tenured under the contract." Since Fox was declared tenured by the arbitrator on the theory of estoppel alone, and not by the col-

lective-bargaining agreement, the Association argues the IELRB's conclusion that the arbitrator's interpretation of the contract conflicted with the School Code in violation of section 10(b) of the Act is undermined by the arbitrator's failure to rely on the contract when he declared Fox a tenured teacher. We disagree.

■ The arbitrator's opinion clearly declared Fox tenured based on an interpretation, right or wrong, of the parties' contract. At the outset of the opinion the arbitrator said:

"I sit in this case as an arbitrator whose authority is derived entirely from the contract. My authority is to interpret the contract. I do not sit as a judge with authority to interpret the School Code.

Nevertheless, interpretation of the contract cannot occur in a vacuum. The School Code is the principal statute that provides the general background against which the contract was negotiated. Moreover, the contract uses language that is identical to language used in the School Code. Thus, consideration of the School Code is relevant in interpreting the contract. Accordingly, I will examine the provisions of the School Code, not to determine whether the grievant was tenured under the Code, but as an aid to determining whether the grievant was tenured under the contract."

Later he noted, based on the sick leave afforded Fox, her evaluations, and salary, "it appears that the parties have treated the grievant as a tenured teacher." The arbitrator then interpreted the definition of tenure in the contract in light of the parties' conduct. Since the contract, in part, defines a grievance as an event or condition caused by inequitable application of the terms of the contract, the arbitrator apparently concluded that because Fox had been treated as a tenured teacher for so long, it would be inequitable to deny her tenure by strict application of the reduction in personnel term of the contract. Thus, the arbitrator declared Fox "tenured under the contract." Although the arbitrator applied the terms of the contract to Fox in a manner he thought was equitable, he did not specifically declare Fox tenured on the theory of estoppel.

The tenure by estoppel theory asserted by the Association directly conflicts with established Illinois law. In *Evans v. Benjamin School District No. 25* (1985), 134 Ill. App. 3d 875, 480 N.E.2d 1380, the court held a school board lacks the authority to grant tenure to a teacher who has not fulfilled the statutory requirements of section 24—11 of the School Code. (Ill. Rev. Stat. 1987, ch. 122, par. 24—11.) The *Evans* court explained:

"It is for the legislature to determine the basis upon which tenure may be granted, not the court, or the school board ***. The School Code *** does not authorize a board to either adopt alternate rules for tenure or waive those existent. School boards, whether in good or bad faith, cannot be allowed to circumvent the spirit and purpose of tenure laws. [Citations.] Tenure is a creature of statute, essentially procedural, and is not derived from contractual concepts or the common law." *Evans*, 134 Ill. App. 3d at 882, 480 N.E.2d at 1386.

The School Code clearly requires school nurses be certificated before they are awarded the privilege of statutory tenure. (Ill. Rev. Stat. 1987, ch. 122, pars. 21—25, 24—11.) The parties do not dispute Fox lacks statutory tenure because she is not certified. (See *Verdeyen v. Board of Education of Batavia Public School District No. 101* (1986), 150 Ill. App. 3d 915, 501 N.E.2d 937.) According to the holding in *Evans*, the school board did not have the authority to treat Fox as tenured. Treatment of an uncertified teacher as tenured constitutes an *ultra vires* act. "It is clear that the doctrine of estoppel cannot be invoked against a public body when the action taken by it was *ultra vires*, *i.e.*, beyond its authority and void. *** The doctrine of estoppel may not be applied to validate an *ultra vires* act." (*Evans*, 134 Ill. App. 3d at 883, 480 N.E.2d at 1386.) Accordingly, even if the arbitrator correctly found the school board had treated Fox as tenured in the past, the principle of estoppel could not have legally been applied to grant Fox statutory tenure.

The court in *District No. 205* acknowledged statutory tenure may not be obtained by estoppel, but suggested "equitable principles may estop the school board from denying that Ms. Fox is tenured solely for purposes of applying the 'reduction in personnel' provision of the contract." (*District No. 205*, 120 Ill. App. 3d at 935, 453 N.E.2d at 1021.) Perhaps the *District No. 205* court envisioned invocation of the theory of equitable estoppel under limited circumstances, for example, when the District had engaged in fraud or was exercising its reduction powers to deliberately discriminate against Fox or to retaliate against her for her part in protected activity. To apply the estoppel theory solely on the basis of the historical treatment of Fox as a tenured teacher would contravene the statutory directive of section 24—11 of the School Code, absent compliance with the requirements of that section.

Next, the Association asserts the appellate court in *District No. 205* declared Fox had a vested right to tenure. Since the Act was not in effect when *District No. 205* was decided, the Association

maintains the application of section 10(b) of the Act by the IELRB retroactively deprived Fox of her substantive right to tenure. The District notes the issue of retroactive impairment of rights was presented to the IELRB when the Association claimed that "[n]o section of the IELRA can be read to have retroactively altered the parties [*sic*] bargained for substantive rights." The corespondents claim the Association has taken an entirely opposite position on appeal in violation of established appellate procedure. A comparison of the respective arguments is necessary.

Upon the District's refusal to comply with the arbitrator's award, the Association filed an unfair labor practice charge and a complaint was issued by the IELRB. The District argued the IELRB did not have jurisdiction to hear the dispute because the Act was being erroneously applied retroactively. In its brief to the IELRB, the Association noted the arbitration, subsequent award, and the District's refusal to comply all occurred after the effective date of the Act. Relying on *Chicago Board of Education v. Chicago Teachers Union* (1986), 142 Ill. App. 3d 527, 491 N.E.2d 1259, the Association argued the refusal to comply with an arbitration award subsequent to the effective date of the Act placed the dispute solely within the exclusive primary jurisdiction of the IELRB. The *Township High School District No. 205* opinion adopted the Association's reasoning to conclude the IELRB had subject matter jurisdiction of the dispute. *Township High School District No. 205*, 4 Pub. Employee Rep. (Ill.) par. 1040, at 152.

The question whether the IELRB had jurisdiction to hear the unfair labor charge was one of procedure and did not affect substantive rights. Before this court, the Association draws a distinction between the procedural argument made to the IELRB and the current argument that the IELRB's application of section 10(b) of the Act to invalidate the arbitrator's award stripped Fox of her vested right to contractual tenure, as recognized by the *District No. 205* court. The exception allowing retroactive application of a statute relating to procedural matters "does not apply where the provisions operate to create new or extinguish former obligations or rights." *Williams v. Weaver* (1986), 145 Ill. App. 3d 562, 567, 495 N.E.2d 1147, 1151.

We recognize the distinction between an argument addressing the retroactive application of statutes affecting procedural rights and one affecting substantive rights. Thus, we cannot agree the Association has "flip-flopped" its position on the issue of retroactive impairment of Fox' rights. Nevertheless, we reject the Association's argument because it is based on a misinterpretation of the *District No. 205* holding.

The *District No. 205* case did not recognize that Fox had a substantive right of contractual tenure because of estoppel. For reasons already discussed, the holding of the case was limited to the finding of arbitrability. The determination of tenure was clearly left to the arbitrator's discretion. Any reference the court made to the principle of estoppel was merely *dicta*.

We find the decision of the IELRB was well-reasoned and supported by statute. With a complaint alleging failure to comply with an arbitrator's award in violation of section 14(a)(8) before it, the IELRB had a duty to determine whether the arbitration award was binding under the Act. Of course an award must be legally valid to be binding. Section 10(b) of the Act provides: "The parties to the collective bargaining process shall not effect or implement a provision in a collective bargaining agreement if the implementation of that provision would be in violation of, or inconsistent with, or in conflict with any statute or statutes enacted by the General Assembly of Illinois." (Ill. Rev. Stat. 1987, ch. 48, par. 1710(b).) Under section 10(b), if, as in this case, an arbitration award is contrary to a specific law or statute, then the award is nonbinding and the IELRB cannot enforce it. *Chicago Board of Education*, 2 Pub. Employee Rep. (Ill.) par. 1089, case No. 84—CA—0087—C, at 256 (Illinois Educational Labor Relations Board, June 24, 1986).

The IELRB found the arbitrator's award declaring Fox tenured under the contract conflicted with section 24—12 of the School Code. Section 24—12 provides:

> "If a teacher in contractual continued service is removed or dismissed as a result of a decision of the board to decrease the number of teachers employed by the board *** in all such cases the board shall first remove or dismiss all teachers who have not entered upon contractual continued service before removing or dismissing any teacher who has entered upon contractual continued service." (Ill. Rev. Stat. 1987, ch. 122, par. 24—12.)

The parties' contract directed any reduction in personnel be done in compliance with section 24—12 of the School Code. That section applies to school nurses as well as classroom teachers, since the term "teachers" is defined by section 24—11 of the School Code as "any or all school district employees regularly required to be certified under laws relating to the certification of teachers." Ill. Rev. Stat. 1987, ch. 122, par. 24—11.

The District decided to decrease the number of nurses because of a decline in enrollment. Fox, who did not hold a school service personnel certificate under section 21—25 (Ill. Rev. Stat. 1987, ch. 122, par.

21—25), was an untenured nurse working with two tenured nurses. Both section 24—12 of the School Code and the parties' contract required the District to dismiss Fox before dismissing the tenured nurses. For reasons already stated, neither the arbitrator nor the school board had the statutory power to declare Fox tenured when she was uncertificated. Moreover, as the *Verdeyen* court noted, to treat an untenured nurse as certified without her "fulfilling the qualifications of section 21—25 would be blatantly unfair to those nurses who obtained their bachelor's degree for the specific purpose of qualifying for a school service personnel certificate and the rights and privileges that accrued therefrom." (*Verdeyen*, 150 Ill. App. 3d at 925, 501 N.E.2d at 943.) We hold the IELRB's dismissal of the complaint was consistent with both the Act and public policy.

■ The Association's final argument that the *District No. 205* opinion was *res judicata* for purposes of the IELRB's review is inappropriately presented for the first time before this court. (*Kravis*, 60 Ill. 2d 141, 324 N.E.2d 417.) We find the argument waived as well as rejected by our interpretation of the *District No. 205* holding as expressed in this opinion.

The opinion of the IELRB dismissing the complaint against the District is affirmed.

Affirmed.

LUND and SPITZ, JJ., concur.