2016 IL App (1st) 152478

No. 1-15-2478

FIRST DIVISION
December 5, 2016

| | | |
|---|---|---|
| SKOKIE FIREFIGHTERS UNION, LOCAL 3033, | ) | Petition for administrative review of |
| | ) | a decision and order of the Illinois |
| Petitioner, | ) | Labor Relations Board, State Panel |
| | ) | |
| v. | ) | |
| | ) | |
| THE ILLINOIS LABOR RELATIONS BOARD, | ) | |
| STATE PANEL; JOHN HARTNETT, JOHN | ) | Illinois Labor Relations Board |
| SAMOLIS, KEITH SNYDER, MICHAEL COLI, | ) | Case No. S-CA-14-053 |
| and ALBERT WASHINGTON, the Members of | ) | |
| Said Board and Panel in Their Official Capacity | ) | |
| Only; MELISSA MLYNSKI, Executive Director | ) | |
| of Said Panel in Her Official Capacity Only; and | ) | |
| THE VILLAGE OF SKOKIE, | ) | |
| | ) | |
| Respondents. | ) | |

JUSTICE SIMON delivered the judgment of the court, with opinion.
Presiding Justice Connors and Justice Harris concurred in the judgment and opinion.

**OPINION**

¶ 1    This review action stems from collective bargaining negotiations between the Skokie

Firefighters Union (Union) and the Village of Skokie (Village). While under the 2009-2010

collective bargaining agreement, the parties were working to formulate the successor agreement,

the 2010-2014 agreement. Negotiation and mediation for the 2010-2014 agreement failed to result

in compromise, so the Union invoked compulsory arbitration under the Illinois Public Labor

Relations Act (Labor Relations Act) (5 ILCS 315/1 *et seq*. (West 2012)). The arbitrator ruled in

favor of the Village, meaning that the provisions regarding promotions as set forth in the

2009-2010 agreement remained in effect for the 2010-2014 agreement. The Union filed an unfair

labor practice complaint against the Village. The Illinois Labor Relations Board (ILRB) dismissed the complaint on the Village's motion, finding that the Village did not breach its duty to bargain in good faith. This review followed. We reverse the Board's decision and remand the cause to the ILRB with directions to enter an order that the Village engaged in an unfair labor practice.

¶ 2                                    BACKGROUND

¶ 3      In June 2010, the Union and the Village were negotiating an agreement to succeed their 2009-2010 collective bargaining agreement. The parties could not agree on certain material terms. The Labor Relations Act grants public employees the right to organize, but it prohibits firefighters, among others, from striking. 5 ILCS 315/2 (West 2012). Instead, the Labor Relations Act gives those employees a procedure to assert their grievances, engage in negotiation and mediation, and, if no compromise can be reached, to compel arbitration. 5 ILCS 315/14 (West 2012). In this case, negotiation and mediation failed, and the Union invoked compulsory interest arbitration.

¶ 4      Relevant to this review, the Union wanted changes to Article XXI of the agreement—the article that sets forth the requirements and procedures for a firefighter to be promoted to the rank of lieutenant. The Union wanted the collective bargaining agreement to contain some of the standards set forth in the Fire Department Promotion Act (Promotion Act) (50 ILCS 742/1 *et seq*. (West 2012)) along with other modifications. In the 2009-2010 agreement, the Union and the Village had agreed to different terms for promotions to lieutenant than those set forth in the Promotion Act.

¶ 5      Prior to the arbitration hearing, the parties exchanged settlement offers. In an offer dated August 21, 2013, the Union detailed the changes it wanted regarding the standards and procedures for promotions to lieutenant. The offer was made before the deadline for final prehearing offers, but at the arbitration hearing, the Village objected to the arbitrator considering the Union's offer,

contending that the offer was beyond the scope of the parties' prearbitration negotiations and that it was submitted too late. The Village did not respond with a prehearing counteroffer on the issue. The parties still dispute the ramifications of their respective prearbitration conduct.

¶ 6     Another issue is whether the promotion standards are mandatory or permissive subjects of bargaining. Mandatory subjects of bargaining are those matters that neither party can refuse to negotiate. *Village of Oak Lawn v. Illinois Labor Relations Bd., State Panel*, 2011 IL App (1st) 103417, ¶ 14. If an agreement cannot be reached, impassed mandatory subjects must be decided by the arbitrator. *Town of Cicero v. Illinois Association of Firefighters, IAFF Local 717 AFL-CIO, CLC*, 338 Ill. App. 3d 364, 370 (2003). On the other hand, permissive subjects of bargaining are terms that the parties are not required to negotiate, but if one side proposes negotiation on those matters, the other side may voluntarily negotiate. *Lid Elec., Inc. v. International Brotherhood of Electrical Workers, Local 134*, 362 F.3d 940, 943 (7th Cir. 2004). A party cannot insist on bargaining over a permissive subject to the point of impasse and negotiation can be cut off at any time without recourse. See *Board of Trustees of University of Illinois v. Illinois Education Labor Relations Board*, 244 Ill. App. 3d 945, 949 (1993). Permissive subjects of bargaining are not to be decided by the arbitrator. 5 ILCS 315/14(h) (West 2012); 80 Ill. Adm. Code 1230.90(k), amended at 27 Ill. Reg. 7456 (eff. May 1, 2003).

¶ 7     At the arbitration hearing, the Union maintained that the promotion standards are permissive subjects of bargaining. In the past, the Union had agreed to terms other than those in the Promotion Act and, thus, waived their statutory rights. This time, the Union insisted on its statutory rights, and it argued that the arbitrator could not order the parties to maintain the status quo under the 2009-2010 agreement because it would be ordering the Union to accept terms that

were permissive subjects of bargaining that it was free to not accept. The Village, on the other hand, argued that the promotion standards were not properly before the arbitrator because they were not bargained for before arbitration.

¶ 8     The arbitrator ruled in favor of the Village. The arbitrator decided that the promotion system was not broken so there was no reason for him to change the system that had been in place in the previous collective bargaining agreements. The arbitrator did not make any finding regarding the Village's argument that the arbitrator lacked jurisdiction to decide the issue because the Union did not raise the issue of promotion standards during negotiations. Instead, the arbitrator simply decided that the status quo should maintain.

¶ 9     After the arbitrator's ruling, the Union filed an unfair labor practice claim with the ILRB. The Village filed a motion to dismiss the complaint. The ILRB dismissed the complaint, ruling that the Village's submission of a permissive subject of bargaining to the arbitrator did not amount to an unfair labor practice. The Union petitioned for administrative review.

¶ 10                              ANALYSIS

¶ 11    When an administrative agency's decision involves a pure question of law, we review it *de novo. Carpetland U.S.A., Inc. v. Illinois Department of Employment Security*, 201 Ill. 2d 351, 369 (2002). When reviewing purely factual findings, the agency's findings and conclusions are deemed to be *prima facie* true and correct and, thus, are reviewed under a manifest weight of the evidence standard. 735 ILCS 5/3-110 (West 2012). Under some circumstances, however, the issue presented cannot be accurately characterized as either a pure question of fact or a pure question of law and, therefore, will be treated as a mixed question, subject to an intermediate standard of review. *Carpetland U.S.A*, 201 Ill. 2d at 369.

¶ 12    Here, there is no dispute over facts. The arbitrator and the ILRB made no findings of fact. The ILRB dismissed the Union's complaint on the basis that there were no issues of fact and that the Union's charge was insufficient as a matter of law, so *de novo* review is appropriate. However, insofar as the case concerns a statute that the agency is charged with administering, we accord the agency's interpretation deference. See *Medina v. Board of Education of the City of Chicago*, 2014 IL App (1st) 130588, ¶ 17.

¶ 13    On review, there is no genuine dispute that the standards for promotion to the rank of lieutenant are a permissive subject of bargaining. The Promotion Act states that it sets forth minimum standards, but that the employer or the union members may waive the provisions concerning promotion standards. 50 ILCS 742/10(d)-(e) (West 2012). And the Promotion Act expressly cements the bargaining status of deviations from the Promotion Act's promotion standards, providing that "any such waivers shall be considered permissive subjects of bargaining." 50 ILCS 742/10(e) (West 2012). Neither party disputes that the subject matter of this review constitutes a permissive subject of bargaining. The case concerns the differences between the promotion criteria from the statute and the promotion criteria that are to end up as part of the collective bargaining agreement, and the waiver of a statutory right is a permissive subject of bargaining. *Mt. Vernon Education Ass'n v. Illinois Education Labor Relations Board*, 278 Ill. App. 3d 814, 820 (1996).

¶ 14    The Promotion Act sets the baseline standards that the union members are entitled to insist upon for each agreement. The provisions of the Promotion Act are the default. Each time a successor agreement is negotiated, the Union is free to take the position that the slate is wiped clean and the criteria insist that the standards set forth in the Promotion Act be the starting point for

negotiation. From there, the Union may waive its rights on its own accord. See *City of Bloomington v. Illinois Labor Relations Board, State Panel*, 373 Ill. App. 3d 599, 612 (2007) (Cook, J., dissenting) (explaining that the standards set forth in the Promotion Act are the "default," and from there the parties may go about negotiating changes). In the past, the Union and the Village had agreed to promotion criteria different than what is set forth in the Promotion Act. But the Union did not want to waive its rights for the upcoming 2010-2014 agreement, and neither the Village nor the arbitrator has the ability to force those waivers.

¶ 15    Under the Labor Relations Act, permissive subjects of bargaining include matters that the union has the right to insist on, such as the recognition of statutory rights. *Wheaton Firefighters Union, Local 3706 v. Illinois Labor Relations Board*, *State Panel (Wheaton Firefighters)*, 2016 IL App (2d) 160105, ¶ 15. A party cannot insist on bargaining over a permissive subject to the point of impasse. *Board of Trustees of the University of Illinois v. Illinois Education Labor Relations Board*, 244 Ill. App. 3d 945, 949 (1993). Absent an agreement to the contrary, permissive subjects of bargaining are not to be decided by the arbitrator. 5 ILCS 315/14(h) (West 2012); 80 Ill. Adm. Code 1230.90(k), amended at 27 Ill. Reg. 7456 (eff. May 1, 2003). The Labor Relations Act does not contemplate allowing an arbitrator to decide a statutorily designated permissive subject of bargaining. Even though the Labor Relations Act is intended to foreclose strikes by police and fire departments and provide an efficient procedure for the resolution of disputes (5 ILCS 315/2 (West 2012)), the General Assembly did not intend for the parties to designate all subject matter to the arbitration process. The distinction between mandatory and permissive subjects of arbitration is in place for a reason, and the arbitrator went beyond his authority by considering and deciding a permissive subject, to the detriment of the Union.

¶ 16     To be clear, the Village had no obligation to negotiate with the Union over this permissive subject. But in the absence of negotiation, the Union is entitled to insist upon the baseline default rights granted to its members in the Promotion Act. The Village cannot force a waiver of those rights; it can only negotiate with the Union for a waiver as it had done in the past. Here, the waiver was imposed through compulsory arbitration of a permissive subject—a result that overrides the union members' vested rights. The arbitrator cannot order the Union to accept any other rights or obligations than those in the promotion statute which is what in effect happened by him ordering the continued waiver of rights against the Union's then-present will.

¶ 17     Two board decisions are featured prominently in the parties' briefs and in the ILRB's decision: *Village of Bensenville*, 14 PERI ¶ 2042 (ISLRB 1998), and *Wheaton Firefighters Union, Local 3706* (*Wheaton*), 31 PERI ¶ 131 (ILRB State Panel 2015). The decisions essentially boil down to a rule that "the mere submission to an interest arbitrator of a contract proposal pertaining to a permissive subject of bargaining does not violate the statutory duty to bargain in good faith." *Bensenville*, 14 PERI ¶ 2042. In this vein, the Village argues that it did not commit an unfair labor practice by merely submitting a permissive issue to the arbitrator. The Village's position on review capitulates that a permissive subject of bargaining was submitted to the arbitrator; the Village simply argues that doing so does not constitute an unfair labor practice under Illinois law. The Village also argues that the Union cannot demonstrate that it insisted to a bargaining impasse on the subject, so the Union's contention that the Village acted improperly in that way is insufficient to substantiate a claim for an unfair labor practice.

¶ 18     Impasse is reached on a subject when neither party is willing to move from its respective position. 51 C.J.S. *Labor Relations* § 233 (2016). In its answer to the complaint before the ILRB,

the Village admitted that it began negotiations for a successor collective bargaining agreement and that the parties commenced interest arbitration to address the outstanding issues. Under the Labor Relations Act, arbitration is to be used to resolve impasses. See 5 ILCS 315/7 (West 2012); 5 ILCS 315/14 (West 2012). The parties did not agree on the promotion criteria during negotiations and once they reached the arbitration hearing they were, as a matter of law, at impasse on the subject of promotion criteria. Because the Union insisted on its statutory rights, the impetus was on the Village to either negotiate for waivers or to accede to the statutory promotion scheme. Instead of taking either of those acceptable paths, the Village allowed an impassed permissive subject of bargaining to be put before and decided by the arbitrator.

¶ 19    At the arbitration hearing, the Union stated its position that the Village's "proposal can't be properly before [the arbitrator] anyway" because the Village is asking the Union members "to give up statutory rights that are set forth in the Fire Department Promotion Act." The Union continued by arguing to the arbitrator that "under the Public Labor Relations Act, you as an arbitrator only have authority to address mandatory topics." The Village acknowledged that "several provisions in there would fall under the heading of permissive."

¶ 20    Consistent with *Bensenville* and *Wheaton*, we take no issue with the general proposition that merely submitting a permissive subject of bargaining to an arbitrator is not an unfair labor practice.[1] *Bensenville*, 14 PERI ¶ 2042; but see *id*. n.8 (explaining that, in some jurisdictions, the mere submission of non-mandatory subjects to an interest arbitrator constitutes a failure to negotiate in good faith); *Wheaton*, 31 PERI ¶ 131. The parties are likewise free to submit a

---

[1] We do, however, note that the parties dispute the correctness of the rule set forth in *Bensenville* and *Wheaton*. This case does not give us occasion to decide the efficacy of that rule because the circumstances here are sufficiently distinguishable.

permissive subject to an interest arbitrator by agreement. *Bensenville*, 14 PERI ¶ 2042; *Wheaton*, 31 PERI ¶ 131. But when the arbitrator rules on the merits of a contested permissive subject over objection and grants a status quo finding in favor of the employer, the rights of the union members have been unlawfully infringed.

¶ 21     The distinguishing feature of *Bensenville* and *Wheaton* as opposed to this case is the existence of prejudice. In both *Bensenville* and *Wheaton*, the holdings were based on the proposition that, if a party objects to the consideration of a permissive subject and the arbitrator does not consider it, the objecting party has no claim for an unfair labor practice because there is no prejudice. *Wheaton Firefighters*, 2016 IL App (2d) 160105, ¶ 22. The reason that the mere submission of a permissive subject was found not to be an unfair labor practice in those circumstances is because if a party objects to the arbitrator's consideration of a permissive issue, then the arbitrator " 'shall not consider that issue.' " *Id*. (quoting 80 Ill. Adm. Code 1230.90(k), amended at 27 Ill. Reg. 7456 (eff. May 1, 2003)). Thus, a party is not prejudiced by the submission of the issue because interposing an objection precludes the arbitrator from considering and deciding that issue. *Id*. ¶ 23 ("As the Union was able to remove the issue from consideration by merely objecting to it, the Union was not prejudiced."). But here, contrary to not considering the subject, the arbitrator decided the issue on the merits in the face of the Union arguing that the arbitrator lacked the authority to do so. The Union here was prejudiced by the Village's conduct because it caused the arbitrator to rule adverse to the Union on an impassed permissive subject.

¶ 22     Section 10(a)(4) of the Labor Relations Act makes it an unfair labor practice for an employer to refuse to bargain collectively in good faith with a labor organization that is the exclusive representative of public employees in an appropriate unit. 5 ILCS 315/10(a)(4) (West

2012). When a public employer breaches its obligation to collectively bargain in good faith as required by section 7 of the Act, it violates section 10(a)(4) and, derivatively, section 10(a)(1) of the Act. *Wheaton Firefighters*, 2016 IL App (2d) 160105, ¶ 15. When an employer insists to impasse on a permissive subject and its insistence results in prejudice to the union members' established rights, the employer has committed an unfair labor practice. *Midlothian Professional Fire Fighters Ass'n, Local 3148*, 29 PERI ¶ 125 (ILRB State Panel 2013). As alluded to in *Wheaton Firefighters*, it is bad faith bargaining when one party has already indicated to the other that it does not intend to relinquish its rights regarding a permissive subject of bargaining, and yet the other party continues to press the issue and submit the issue to an interest arbitrator anyway. See *Wheaton Firefighters*, 2016 IL App (2d) 160105, ¶ 23.

¶ 23    At the arbitration hearing and before the ILRB, the Village's primary argument was that the Union's proposal should not be considered because it was not negotiated through the collective bargaining process prior to the arbitration. Generally, before a matter can be decided through compulsory interest arbitration, the parties must have negotiated and attempted to resolve the matter first. 80 Ill. Adm. Code 1230.70, amended at 27 Ill. Reg. 7456 (eff. May 1, 2003). The Village repeatedly argued that its position hinged on whether the Union's proposal was "submitted in a timely fashion so that the parties could engage in negotiations over it before it came to [the arbitrator] in an interest arbitration context." The arbitrator declined to address that argument and focused on the substance.

¶ 24    The arbitrator did not rule that he lacked jurisdiction to decide the issue, nor did he ever make any factual finding that the Union failed to adequately bargain on this topic prior to invoking arbitration. No evidentiary hearing was held. There is nothing in the record that would allow us to

make that adverse factual finding. The arbitrator ruled on the merits that status quo would prevail. He did not make a finding that the Union, in fact, insufficiently bargained the promotion standards prior to arbitration. In the arbitration ruling, on the issue of promotions, the arbitrator found for the Village, granting its "offer" of status quo. The Village did not respond to the Union's prearbitration settlement offer (because it thought the relevant issue was improperly presented), causing the arbitrator to take up the issue and decide it on the merits. In the arbitration award, the arbitrator states that "the Village seeks to maintain the *status quo*." He further stated in his order that "the Village's offer on promotions is therefore adopted." The Village did not move the arbitrator to vacate or modify the arbitration award. The Village likewise did not seek any postdecision special finding that the Union's bargaining offer was untimely.

¶ 25     This opinion should not be construed to express a denunciation of the Village's bargaining or arbitration tactics. Instead of addressing the mandatory/permissive issue, the jurisdiction issue, or the prejudice to the union members, the arbitrator focused exclusively on the fact that the system in place under the prior agreement was really not broken. The arbitrator rightly pointed out that collective bargaining is best left up to the parties and that arbitrators should not get involved and disturb the status quo when there are minimal or no grievances. The arbitrator's practical assessment is reasonable, but it is contrary to the law in this case. The result is that the Village and the arbitrator combined to put a nonarbitrable issue into consideration with the resulting award forcing the Union to waive statutory rights that it did not have to and did not want to waive.

¶ 26     The Village argues that "the Arbitrator's conduct simply cannot be attributed to the Village," but it is inescapable that the Village putting the issue before the arbitrator and the arbitrator exceeding his authority combined to deprive the union members of their rights. One

could not happen without the other. The fact of the matter is that these firefighters have statutory rights that they are fully entitled to insist upon. If they do so as they did here, neither the Village nor an arbitrator may compel them to accept different rights than those guaranteed to them by the General Assembly.

¶ 27    The Village seems to tacitly concede, though never outright say, that the arbitrator exceeded his authority. The Village attempts to downplay the role that its own conduct had in the parties arriving at this point and the fact that the error was invited. The Village refused to accept a proposal that returned the firefighters to their statutory rights—a proposal that ensconced the rights that the firefighters were unquestionably entitled to as a matter of law. The Village never submitted a prearbitration settlement offer on the subject. Instead of recognizing the union members' vested rights, it asserted that if given the opportunity, it would submit a proposal that was largely status quo. The Village, though, was not entitled to insist on anything. The Village was obligated to accept the Union's right to the statutory default promotion criteria and then, only through negotiation, attempt to secure waivers. Though the arbitrator's errors were one significant cause, the Village's conduct was instrumental in subjecting the Union to an unfair labor practice.

¶ 28    In addition to the foregoing, the fact that a permissive subject is included in one contract does not make negotiations over that subject mandatory during the next negotiations. *Allied Chemical & Alkali Workers of America, Local Union No. 1 v. Pittsburgh Plate Glass Co., Chemical Division*, 404 U.S. 157, 187 (1971). That is exactly what the arbitrator allowed to happen in this case. He decided that since the subject had been negotiated and the system was not broken, then it was his prerogative to keep the criteria the same for the successor agreement. Because the parties did not bargain for any permissive modifications to the provisions of the

Promotion Act this time around, the provisions in the Promotion Act are the default prevailing criteria. The arbitrator cannot compel the Union to accept deviating terms and thereby force a waiver of the union members' statutory rights just because the Union did so in a previous agreement and the system was not broken. Absent a negotiated waiver, the Village was not entitled to seek, and the arbitrator was not entitled to grant, a status quo ruling on this permissive subject of bargaining.

¶ 29    The Village argues that the only issue before the ILRB was whether submitting the promotion issue to the arbitrator constitutes an unfair labor practice. But to construe this case so narrowly is to avoid the reality of the situation. The permissive subject was presented to the arbitrator, and the Village cannot blindly avoid the consequences of what followed. That is what makes this case different from *Bensenville* and *Wheaton* which the Village so strongly relies upon. Here, it is not just that the issue was put before the arbitrator, but that the consequence of the Village's conduct prejudiced the vested rights of the union members. See *Wheaton Firefighters*, 2016 IL App (2d) 160105, ¶¶ 22-23.

¶ 30    To summarize, the Promotion Act is clear. The statutory procedures and standards for becoming a lieutenant can be modified only if the Union chooses to waive its members' statutory rights. 50 ILCS 742/10(e) (West 2012). Bargaining on those subjects is expressly permissive. *Id*. The arbitrator cannot compel the firefighters to accept the Village's proposal or the terms of the previous agreement. The arbitrator cannot rule on the matter at all unless the parties agree to resolve the issue in that manner. The Village's submission of the subject to the arbitrator and its refusal to accede to the union members' clear statutory rights resulted in substantial prejudice and constitutes an unfair labor practice.

¶ 31                          CONCLUSION

¶ 32     Accordingly, the decision of the Illinois Labor Relations Board is reversed. The cause is remanded to the Illinois Labor Relations Board with directions that it vacate its order dismissing the unfair labor practice complaint and enter an order that the Village of Skokie engaged in an unfair labor practice.

¶ 33     Reversed and remanded with directions.